HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KYLE LEAR, and RICHARD and DEBRA LEAR, husband and wife, and the marital community composed thereof,

Plaintiffs,

v.

IDS PROPERTY CASUALTY INSURANCE COMPANY, an admitted insurer,

Defendant.

CASE NO. C14-1040 RAJ

ORDER

This matter comes before the Court on Defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  Dkt. # 48.  Plaintiffs oppose the motion.  Dkt. # 55.[1]  For the reasons that follow, the Court **GRANTS in part and**

---

[1] The Court strongly disfavors footnoted legal citations.  Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules.  *See* Local Rules W.D. Wash. LCR 7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult."  *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014).  The Court strongly discourages the parties

**DENIES in part** the motion.

## I.   BACKGROUND

This case arises from an October 31, 2012 auto collision in which Kyle Lear's 1995 Pontiac Grand Am rear-ended Troy Milles's Nissan.  Mr. Lear claims that he is the victim of a hit-and-run, the impact of which propelled him into the rear end of Mr. Milles's vehicle.  Dkt. # 55, at pp. 1-2.  Because his parents owned the Pontiac, Mr. Lear was covered under his parents' insurance policy with Defendant IDS Property Casualty Insurance Company ("Defendant" or "IDS").  *Id.*  This policy included personal injury protection (PIP), underinsured motorist coverage (UIM), liability coverage, and collision coverage.  *Id.*; *see also* Dkt. # 50-1 (Policy).  Mr. Lear claimed injuries as a result of the collision and therefore asserted a PIP and UIM claim, and his parents asserted a collision claim with IDS.  Dkt. # 55, at p. 2.

Soon after the collision, IDS recorded statements from both Mr. Lear and Mr. Milles.  Dkt. ## 50-2, 50-3.  Mr. Lear told IDS that an unknown driver hit him from behind and drove away without accounting for the damage.  Dkt. # 50-2, at pp. 8-9.  Mr. Lear could not identify the unknown driver or vehicle.  Mr. Milles told IDS that Mr. Lear claimed to have been hit from behind but Mr. Milles did not witness a third vehicle or hear that alleged impact.  Dkt. # 50-3, at p. 11.  Both Mr. Lear and Mr. Milles agreed that traffic was heavy the day of the collision.  Dkt. ## 50-2, at p. 12, 50-3, at pp. 15-16.  Such heavy traffic suggests that it would be a challenge for any hit-and-run driver to escape the

---

from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

The Court further notes that Plaintiffs failed to cite to the record in their brief.  This is unacceptable practice.  The Court declines to use its discretion to strike the factual portions of Plaintiffs' brief and the Court will decline to issue sanctions at this time.  However, Plaintiffs would be prudent to cite to the record in any subsequent submissions to the Court as the Court may not extend such leniency in the future.

scene of the collision without recognition or identification.

Mr. Lear sought medical treatment for pain in his neck, lower back, and left extremities. IDS covered his medical treatment pursuant to the PIP portion in the policy. Dkt. # 49-1. However, IDS questioned whether a third driver rear-ended Mr. Lear and sought examinations under oath of Mr. Lear and his parents. In response, the Lears obtained counsel who accepted the case on contingency. While IDS investigated the hit-and-run claim from January to May of 2013, it suspended any additional PIP payments, which at the time amounted to one pending payment for medical services. Dkt. # 50 (Michalak Decl.), at ¶ 12. However, with the PIP portion of the policy suspended, Mr. Lear was unable to seek further treatment. Dkt. # 56-2. His attorney attempted on several occasions to discuss the PIP issue with IDS's attorney, stressing that Mr. Lear wished to pursue treatment but could only do so if IDS would cover the costs under the PIP portion of the policy. Dkt. # 56-2, at p. 18.

As part of its investigation, IDS retained David Wells, an accident reconstruction expert, to analyze Mr. Lear's Pontiac. Dkt. ##49-3, 49-4. Mr. Wells conducted several calculations to reconstruct the accident. He concluded on a more probable than not basis that an unknown driver did not rear-end Mr. Lear. *Id*. However, Mr. Lear's father brought the Pontiac to a trusted auto appraiser who conducted a quick inspection and found that the damage to the rear of the vehicle could have resulted from a low-impact, rear-end collision. Dkt. # 49-16.

Upon completion of its investigation, IDS paid all PIP claims and covered any property damage. Mr. Milles filed a tort claim against Mr. Lear as a result of the collision, and IDS assumed the defense on behalf of Mr. Lear. At issue are whether IDS is still liable under the UIM portion of the policy and any damages resulting from IDS's handling of the PIP and collision claims.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec.*

*Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

### A. Underinsured Motorist Benefits

Washington law requires that insurance companies who insure "against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle" provide coverage for damages arising from hit-and-run motor vehicles. RCW 48.22.030(2). Insurance companies may not employ a "physical contact" rule for hit-and-run incidents such that coverage is premised on there being actual contact between the hit-and-run vehicle and the insured's vehicle. *See Hartford Acc. & Indem. Co. v. Novak*, 83 Wash. 2d 576, 582 (1974) (finding that Washington's law is "intended to afford protection to an insured for injuries or damages proximately caused by a hit-and-run vehicle, irrespective of its actual physical contact with the vehicle of the insured.").

If an insured claims that the accident arose from the actions of a phantom vehicle that had no physical contact with the insured, then "[t]he company has an opportunity to show fraud." *Id*. at 585. In those cases, the insurance company may require evidence "other than the testimony of the insured or any person having an underinsured motorist claim resulting from the accident." RCW 48.22.030(8)(a). Washington law further requires the insured to report such accidents to the proper authorities within seventy-two hours. RCW 48.22.030(8)(b).

IDS's arguments for summary judgment on Mr. Lear's UIM claim are premised on the fact that there was no physical contact between the hit-and-run vehicle and Mr. Lear's Pontiac, and therefore Mr. Lear must provide competent evidence, other than his own testimony or that of his parents. Dkt. ## 48 (Motion), at pp. 9-10, 50-1, at p. 15. IDS bases its no-contact assumption on the conclusions of its expert and mechanic and on circumstances arising from the inconsistent testimony of Mr. Milles and the Lears. Dkt.

# 48, at pp. 9-10.

However, Darrell Harber, who provided his expert opinion regarding the appraisal of Mr. Lear's Pontiac, disagreed that there was no contact between the alleged hit-and-run vehicle and the Pontiac. Dkt. # 49-16, at p. 35 (IDS's attorney asked Mr. Harber whether he believed there was evidence of a rear-end collision with the Pontiac. Mr. Harber answered "yes."). Mr. Harber admits that he did not remove the rear bumper to conduct a closer inspection, but he nonetheless believed that a vehicle hit the rear of the Pontiac at a low speed. *Id*. at 37.

At this stage, the Court is not permitted to invade the province of the jury by weighing evidence or judging the credibility of witnesses. *Neely v. St. Paul Fire & Marine Ins. Co*., 584 F.2d 341, 344 (9th Cir. 1978). Accordingly, there is a genuine issue of material fact whether an unknown driver hit Mr. Lear's Pontiac on the day of the accident. If an unknown driver did hit Mr. Lear's Pontiac, then IDS's arguments based on the no-contact provision of the policy are moot. As such, the Court **DENIES** IDS's motion with regard to Plaintiffs' UIM claim.

B.  Insurance Bad Faith

In Washington, "an insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003). Like other torts, establishing a claim for bad faith requires proof of duty, breach, proximate cause, and damages. *Id.* "In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). "Claims of bad faith 'are not easy to establish and an insured has a heavy burden to meet.'" *Bayley Constr. v. Great Am. E & S Ins. Co.*, 980 F. Supp. 2d 1281, 1290 (W.D. Wash. 2013) (quoting *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002)). Courts must place the insurer's actions in context when deciding whether they were unreasonable, frivolous,

or unfounded. *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d 1275, 1288 (W.D. Wash. 2015) (citing *Keller v. Allstate Ins. Co.*, 915 P.2d 1140, 1145 (Wash. App. 1996)). "Violation of Washington's insurance regulations is evidence of bad faith." *Id.* at 1252 (citing *Coventry Associates v. Am. States Ins. Co.*, 274, 961 P.2d 933, 935 (1998)).

"A claim of bad faith cannot succeed when the insurer 'acts honestly, bases its decision on adequate information, and does not overemphasize its own interest.'" *Beasley*, 2014 WL 1494030, at *7 (quoting *Werlinger v. Clarendon Nat. Ins. Co.*, 120 P.3d 593, 595 (Wash. Ct. App. 2005)). A bad faith claim cannot succeed without proof of harm. *Id.* "Because bad faith is a question of fact, '[a]n insurer is entitled to a dismissal on summary judgment if, after viewing the facts in the insured's favor, a reasonable person could only conclude that its actions were reasonable.'" *Id.* (quoting *Werlinger*, 120 P.3d at 595). Summary judgment is also appropriate in instances where a reasonable person could only conclude the insured was not harmed. *Id.*

*1. IDS's Investigation and Pending of the PIP Benefits*

An insurer must reasonably investigate an insured's claim. *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1035 (Wash. Ct. App. 2000). This requirement is set forth in the Washington Administrative Code ("WAC"). "Refusing to pay claims without conducting a reasonable investigation" is an unfair or deceptive act. WAC 284-30-330(4). It is also unfair to "[f]ail to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted." WAC 284-30-330(5).

Plaintiffs claim that IDS was unreasonable when it suspended the PIP portion of the policy pending its investigation. Plaintiffs present no authority supporting its view

that IDS was completely barred from investigating the PIP claims.[2] Plaintiffs cite to *Sherry v. Financial Indem. Co.*, but there the court confirmed that insurance companies are responsible for paying insurers their PIP benefits even when the insurer is at fault. 160 Wash. 2d 611, 624 (2007). *Sherry* made no comment or finding with regard to an insurance company's ability to investigate PIP claims. Moreover, whether Mr. Lear was at fault is not the issue raised by IDS. Instead, IDS was concerned with fraud, and for that reason it was entitled to reasonably investigate the claim. *Ki Sin Kim v. Allstate Ins. Co.*, 153 Wash. App. 339, 361 (2009) (finding that Allstate did not act in bad faith when simultaneously investigating Kim's PIP and UIM claims). Notably, IDS pended a single medical payment during the investigation; it did not categorically suspend all payments. Dkt. # 50, ¶ 12.

The Court finds that IDS's investigation into the PIP claims was reasonable and ultimately IDS paid Mr. Lear's medical expenses. A reasonable jury would not conclude otherwise. As such, the Court **GRANTS** IDS's motion with regard to bad faith handling of the PIP claims.

*2. IDS's Investigation and Pending of the Collision Benefits*

The Lears argue that IDS acted in bad faith when it suspended payments under the collision coverage portion of the policy during the investigation. Dkt. # 1-2 (Complaint), at ¶¶ 8.1-8.21.

IDS was reasonable in conducting an investigation when it received competing narratives of the accident—Mr. Lear claiming there was a hit-and-run driver and Mr. Milles denying having heard or witnessed any such impact or driver. Ultimately, IDS

---

[2] Plaintiffs cite to WAC 284-30-395 to argue that IDS could not suspend PIP benefits while it investigated potential fraud. However, that statute applies when an insurer consults with health professionals when evaluating the reasonableness or necessity of treatment. WAC 284-30-395 (stating that the statute "applies only where the insurer relies on the medical opinion of health care professionals to deny, limit, or terminate medical and hospital benefit claims."). This is not the situation here; the statute is inapplicable for these purposes.

honored the collision benefits once it completed the investigation.  The Court finds this analysis similar to the bad faith analysis with regard to the PIP benefits, and once more finds that IDS was reasonable.  For similar reasons, the Court **GRANTS** IDS's motion with regard to bad faith handling of the collision claims.

### C. Insurance Fair Conduct Act

Under the Insurance Fair Conduct Act ("IFCA"), an insurance policyholder who has been "unreasonably denied a claim for coverage or payment of benefits by their insurer" may file an action for damages.  RCW 48.30.015.  An insurer's alleged violation of a WAC provision is not actionable under the IFCA unless it is accompanied by an unreasonable denial of coverage or payment: "By its plain language, IFCA gives an insured no right to sue solely for a violation of a Washington insurance regulation.  The right to sue arises solely from an unreasonable denial of a claim for coverage or payment of benefits." *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1255 (W.D. Wash. 2014).  Offering or paying a settlement that is not based on a reasoned evaluation of what the insurer knew or should have known at the time about the insured's claim is an unreasonable denial of coverage under the IFCA.  *Morella v. Safeco Ins. Co. of Ill.*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. 2013).  But if there is a delay in payment or coverage "due to a dispute over the amount owed, the delay alone does not constitute a denial of payment under IFCA." *Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *6 (W.D. Wash. 2014).

IDS encountered what it believed to be competing narratives of the alleged hit-and-run on October 31, 2012.  Dkt. # 50-4 (Reservation of Rights Letter).  As such, it investigated the issue and pended benefits in the interim.  The Court finds the IFCA analysis similar to the bad faith analysis above.  That is, the Court does not find that a reasonable jury would conclude from the evidence that IDS unreasonably denied any claims for coverage or that it unreasonably delayed paying benefits while an investigation was pending.  Ultimately, IDS paid Mr. Lear's medical expenses and negotiated a

settlement amount for the value of the car. Dkt. # 49-12, at p. 33. Accordingly, the Court **GRANTS** IDS's motion with regard to Plaintiffs' IFCA claims.

D. Consumer Protection Act

A Consumer Protection Act (CPA) claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Parties initiating suit under the CPA may recover actual damages, costs, and reasonable attorney's fees. RCW 19.86.090. Both parties agree that Mr. Lear is not entitled to emotional distress damages under the CPA. Dkt. # 55, at p. 13.

Because the Court has already concluded that IDS was neither unfair nor deceptive with regard to investigating Mr. Lear's PIP claims or the Lears' collision claims, this CPA claim fails on the first element. Accordingly, the Court **GRANTS** IDS's motion with regard to Plaintiffs' claims that IDS violated the CPA when handling the PIP or collision claims.

E. Breach of Contract Claims

"To prevail on a contract claim, the plaintiff must show an agreement between the parties, a parties' duty under the agreement, and a breach of that duty." *Fid. & Deposit Co. of Maryland v. Dally*, 201 P.3d 1040, 1044 (Wash. Ct. App. 2009). Here, Plaintiffs claim that IDS breached the insurance policy because IDS "wrongly resfus[ed] to pay PIP benefits." Dkt. # 55, at p. 19. To advance their claims, Plaintiffs cite to WAC 284-30-395, which the Court has already addressed above as inapplicable for these purposes. Plaintiffs do not cite to a provision within the policy that IDS breached.

IDS defends its actions by citing to the "What To Do In Case Of An Auto Accident Or Loss" portion of the policy. Dkt. # 48, at p. 13 (citing to Dkt. # 50-1, at p. 12). IDS claims that this provision authorized it to examine the Lears under oath. *Id.* Indeed, this provision of the policy does allow for IDS to conduct such examinations and

requires that the Lears cooperate with any investigation. Dkt. # 50-1, at p. 12. However, IDS is incorrect that the policy authorized it to pend the payment of PIP benefits during the course of the investigation. *See* Dkt. # 48, at p. 13 (arguing that the policy authorized IDS to "pend the payment of benefits during an investigation"). The Court reviewed the policy that IDS submitted in Docket number 50-1 and finds no such provision.

At the same time, there is no provision prohibiting IDS from pending the payment of benefits during the course of an investigation. Moreover, Washington law contemplates that insurance companies will investigate certain claims made by their insureds. *See, generally*, WAC 284-30-330. Ultimately, IDS was concerned that Mr. Lear was making fraudulent statements, which if true would authorize IDS to deny any claims arising from such statements. Dkt. # 50-1, at p. 18. Therefore, IDS was required to conduct a reasonable investigation before it made any decisions to deny benefits. Of course, after its investigation, IDS decided to extend payment for the benefits rather than deny payment for the benefits.

The Court conducts a similar analysis with regard to the Lears' collision coverage claims and finds a similar result. IDS reasonably investigated those claims and paid the benefits at the conclusion of the investigation.

The Court does not find evidence that IDS breached any provisions of the policy when it delayed payment of the PIP or collision benefits during the course of the investigation. However, because the Court finds that a UIM claim may exist, there is a question of fact whether the Lears may maintain a breach of contract claim with regard to any unpaid UIM benefits. Accordingly, the Court **GRANTS in part and DENIES in part** IDS's motion with regard to Plaintiffs' breach of contract claims.

### IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS in part and DENIES in part** IDS's motion for summary judgment. Dkt. # 48. This matter will proceed on Plaintiffs' UIM claim and any related breach of contract claim.

1 | The Court granted summary judgment as to Plaintiffs' bad faith claims. As such,
2 | IDS's motion to exclude Gary Williams's testimony is **MOOT**. The Court instructs the
3 | Clerk to terminate that motion. Dkt. # 66.

Dated this 11th day of January, 2017.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge